

**SIGNED this 7th day of December, 2012**

_____
Marcia Phillips Parsons
**UNITED STATES BANKRUPTCY JUDGE**

_____

**[This opinion is not intended for publication as the precedential effect is deemed limited.]**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re<br><br>  BRADFORD K. PARKINS,<br><br>                    Debtor. | No. 12-50439<br>Chapter 7 |
| PAMELA M. GOSS,<br><br>     Plaintiff,<br><br>vs.<br><br>BRADFORD K. PARKINS,<br><br>     Defendant. | Adv. Pro. No. 12-5025 |

### M E M O R A N D U M

Appearances:

| | |
|---|---|
| T. Wood Smith, Esq.<br>416 W. Main Street<br>Greeneville, Tennessee 37743<br>*Attorney for Pamela M. Goss* | Jonathan S. Cave, Esq.<br>104 N. College Street<br>Greeneville, Tennessee 37743<br>*Attorney for Bradford K. Parkins* |

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.** In this adversary proceeding, Pamela M. Goss (the "Plaintiff") seeks a determination of nondischargeability pursuant to 11 U.S.C. § 523(a)(2), (4), and (6) of a debt owed to her by the debtor, Bradford K. Parkins (the "Defendant"). Presently before the court is the Defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), and the Plaintiff's motion for summary judgment as to § 523(a)(4) and (6). For the reasons discussed hereafter, the court concludes that the debt is nondischargeable under 11 U.S.C. § 523(a)(6). Accordingly, the Plaintiff's summary judgment motion will be granted, and the Defendant's motion to dismiss denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

I.

On December 28, 2006, the Plaintiff sued the Defendant in the Chancery Court for Greene County, Tennessee, for damages arising out of an allegedly defective house constructed by the Defendant and sold to the Plaintiff. Although the record is not entirely clear, apparently during the course of the litigation the parties settled the lawsuit, with the Defendant agreeing to pay the Plaintiff $17,800 in settlement of her claims. The terms of the settlement were set forth in a Memorandum of Agreement dated August 8, 2008, and specified that the Defendant would pay the Plaintiff the agreed amount "in installments as Defendant is able over the next year," with any remaining sums plus 6% interest due by August 31, 2009. To secure the settlement, the Defendant agreed to give the Plaintiff a lien on certain real property, and to assign to her his right to payment of $15,000 from his ex-wife Lisa Marie Parkins, as set forth in a judgment entered in the Defendant's favor in a separate proceeding on July 21, 2008. According to the terms of that judgment, Ms. Parkins was to pay the Defendant $15,000 by July 11, 2009. The Memorandum of Agreement between the Plaintiff and the Defendant recited that Plaintiff's case against the Defendant would remain open pending full payment, and that if he breached the agreement by failing to pay all sums due, the settlement would be null and void, and all of Plaintiff's claims would be reinstated.

In accordance with the parties' agreement, the Defendant executed a deed of trust, granting the Plaintiff the contemplated mortgage. Additionally, on September 30, 2008, the parties signed an "Assignment Of Payments To Be Received Under Judgment." The Assignment provided that:

2

> [Defendant] hereby assigns to [Plaintiff] his right to receive payment from Lisa Marie Parkins under the judgment in Case No. 07CV018. [Defendant] will promptly provide notice of this Assignment to Lisa Marie Parkins, will advise her to make timely payment directly to [Plaintiff] unless notified by [Plaintiff] otherwise, and will provide [Plaintiff] with documentation that he has provided Lisa Marie Parkins with said notice.

The Assignment also recited that the Plaintiff was a holder of a mortgage lien in the amount of $17,800 against certain real property owned by the Defendant, and that Plaintiff agreed to release the mortgage lien and the assignment upon payment in full of the $17,800 plus interest.

Subsequent to the Assignment, Lisa Marie Parkins paid into the office of the Circuit Court Clerk for Greene County a check in the amount of $12,431.77. Additionally, Greeneville Federal Bank paid into the same office the sum of $4,127.84 from a levy by the Defendant on Lisa Marie Parkins' bank account. On August 19, 2009, the Circuit Court Clerk delivered these two sums to the Defendant, by check made payable to him in the amount of $16,559.61.

Despite the assignment, the Defendant negotiated the check and retained the proceeds. Thereafter, the Plaintiff returned to Greene County Chancery Court where her lawsuit against the Defendant was still pending, and moved to enforce the parties' settlement agreement. On June 9, 2010, the state court entered a judgment against the Defendant in the amount of $17,800, plus $1,869, for interest that had accrued since the August 8, 2008 settlement, and attorney fees. The order further directed the Defendant to "make payment within thirty (30) days to the Plaintiff of the $15,000 which he pledged as a partial settlement payment."

On March 7, 2012, almost two years later, the Defendant filed for chapter 7 bankruptcy relief. In turn, the Plaintiff initiated this adversary proceeding on June 11, 2012, pursuant to 11 U.S.C. § 523(a)(2), (4), and (6). Although not clear from the complaint, it appears that the Plaintiff's allegations of nondischargeability pertain solely to the Defendant's failure to pay the Plaintiff the $15,000 that he had assigned to her from his judgment against his ex-wife. According to the complaint, the allegations of which were sworn to by the Plaintiff, the Defendant "fraudulently, intentionally, willfully and maliciously failed to negotiate that check over to the Plaintiff"; "fraudulently, intentionally, willfully and maliciously converted those funds to his own

3

use, causing Plaintiff's injury"; and "[t]he Defendant had knowledge that his actions would cause injury to the Plaintiff." The Plaintiff further alleges that "[w]hile the underlying debt owed by the Defendant to the Plaintiff . . . may have been dischargeable, the Defendant's conversion of funds he had assigned to the Plaintiff amounted to theft and conversion, and is nondischargeable."

The Defendant filed an answer to the complaint, denying the allegations of nondischargeability. Thereafter, the Defendant filed on October 5, 2012, a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] The Plaintiff responded on October 12, 2012, with a motion for summary judgment as to her § 523(a)(4) and (6) counts. The motion was supported by the affidavit of the Plaintiff; the affidavit of Pam Venerable, Clerk of the Greene County, Tennessee Circuit Court, to which is attached certain state court pleadings and documents; and the affidavit of Kay Solomon-Armstrong, Clerk and Master of the Greene County, Tennessee Chancery Court, along with certain attachments.

Neither Defendant's motion to dismiss nor Plaintiff's summary judgment motion was supported by a brief as required by the local rules of court. *See* E.D. LBR 7007-1(a). Similarly, the Plaintiff's motion for summary judgment was not accompanied by a statement of undisputed material facts. *See* E.D. LBR 7056-1(a). Accordingly, this court entered an order on October 12, 2012, stating that the motions would be summarily denied absent a correction of these deficiencies within 20 days. Both parties thereafter filed the required briefs, and the Plaintiff filed a statement of undisputed facts in support of her summary judgment motion. The Defendant thereafter filed a statement of additional undisputed facts on November 9, 2012, to which the Plaintiff responded.

The court will first address Plaintiff's summary judgment motion, along with the Defendant's

---

[1] The Defendant did not raise failure to state a claim as a defense in his answer. Consequently, his current Rule 12(b)(6) is technically a motion for judgment on the pleadings under Rule 12(c). *See Jackson v. Heh*, 215 F.3d 1326, at *3 (6th Cir. 2000) (table opin.) ("For a dismissal under Rule 12(b)(6), the moving party must request judgment in a pre-answer motion or in the answer itself, whereas a motion for dismissal under Rule 12(c) may be submitted after the answer has been filed."); Fed. R. Civ. P. 12(h)(2) (Failure to state a claim upon which relief can be granted may be raised in any pleading allowed under Rule 7(a) or by motion under Rule 12(c).). Other than timing, the motions are otherwise indistinguishable. *Jackson*, 215 F.3d 1326, at *3.

response in opposition to that motion, and then if necessary, the merits of Defendant's motion to dismiss.

## II.

Fed. R. Civ. P. 56(a), as incorporated by Fed. R. Bankr. P. 7056, provides that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought" and that the "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." When deciding a motion for summary judgment, the court does not weigh the evidence to determine the truth of the matter asserted but simply determines whether a genuine issue for trial exists. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986). The moving party bears the burden of proving that, based upon the record presented to the court, there is no genuine dispute concerning any material facts. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986); *Owens Corning v. Nat'l Union Fire Ins. Co.*, 257 F.3d 484, 491 (6th Cir. 2001). The burden then shifts to the nonmoving party to come forward with specific facts showing a genuine issue for trial. *Merriweather v. Zamora*, 569 F.3d 307, 313 (6th Cir. 2009). Reliance solely on allegations or denials contained in the pleadings or a "mere scintilla of evidence in support of the nonmoving party will not be sufficient." *Nye v. CSX Transp., Inc.*, 437 F.3d 556, 563 (6th Cir. 2006); *see also Matsushita Elec. Indus. Co.,Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986). The facts and all resulting inferences are viewed in a light most favorable to the nonmovant, and the court decides whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. Nevertheless, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 474 U.S. at 587 (citations omitted).

## III.

The Plaintiff contends that the undisputed material facts in this case establish that her claim against the Defendant is nondischargeable as a matter of law under 11 U.S.C. § 523(a)(4) and (6).

5

Pursuant to these provisions, excluded from the discharge of an individual debtor is any debt:

> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; [or]
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

11 U.S.C. § 523(a). Under § 523(a) generally, a plaintiff bears the burden of proving each of the elements of nondischargeability by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291, 111 S. Ct. 654 (1991). Moreover, exceptions to a debtor's discharge are to be strictly construed against the creditor. *Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998) (citing *Manufacturer's Hanover Trust v. Ward (In re Ward)*, 857 F.2d 1082, 1083 (6th Cir. 1988)). "However, the relief provided by the Bankruptcy Code is intended only for the 'honest but unfortunate' debtor and not to protect perpetrators of fraud or those who engage in egregious conduct." *Custom Kilns v. Pierron (In re Pierron)*, 448 B.R. 228, 236 (Bankr. S.D. Ohio 2011) (citing *Grogan*, 498 U.S. at 287).

With respect specifically to § 523(a)(4), the Plaintiff asserts that the Defendant's actions constitute embezzlement. "Federal law defines 'embezzlement' under section 523(a)(4) as 'the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come.'" *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1172-73 (6th Cir. 1996) (quoting *Gribble v. Carlton (In re Carlton)*, 26 B.R. 202, 205 (Bankr. M.D. Tenn. 1982)). "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicated fraud." *Board of Trustees of Ohio Carpenters' Pension Fund v. Bucci (In re Bucci)*, 493 F.3d 635, 644 (6th Cir. 2007) (quoting *In re Brady*, 101 F.3d at 1173); *see also Issacs Cars, Inc. v. Woods (In re Woods)*, 418 B.R. 226, 230 (Bankr. W.D. Ky. 2009) ("To succeed on a theory of embezzlement, the Plaintiff must prove that '(a) the Debtor appropriated funds for his own benefit, and (b) he did so with fraudulent intent or deceit.'" (citation omitted)). Furthermore, "[b]oth the intent and the actual misappropriation necessary to prove embezzlement may be shown by circumstantial evidence." *WebMD Practice Servs. Inc. v. Sedlacek (In re Sedlacek)*, 327 B.R. 872, 880 (Bankr. E.D. Tenn. 2005) (quoting *Goodmar, Inc. v. Hamilton (In re Hamilton)*, 306 B.R. 575, 582 (Bankr. W.D. Ky. 2004)); *see also Cash America Fin. Servs., Inc. v. Fox (In re Fox)*, 370 B.R.

6

104, 116-17 & n.7 (B.A.P. 6th Cir. 2007) (concluding that misrepresentational fraud is not required, but rather a broader definition of fraud applies under § 523(a)(4) which includes "those instances when a debtor is given possession of, or control over, a creditor's property and then decides to wrongfully take the property at some later time").

Regarding the first element of embezzlement, the debtor was entrusted with property belonging to another, the Plaintiff asserts that this requirement is established by the Assignment, whereby the Defendant assigned his interest in his claim against his ex-wife to the Plaintiff. As to the second element, the debtor appropriated the property for a use other than that for which it was intended, the Plaintiff maintains that this element is met by the Defendant's retention of the check proceeds, rather than paying them to the Plaintiff. Lastly, the Plaintiff asserts that she is not required to prove fraudulent intent. Instead, she states that embezzlement is established by the fact that the Defendant deprived the Plaintiff of funds that he had no right to keep in light of the Assignment, citing *In re Carlton*, 26 B.R. at 205 ("The legislative history of § 523(a)(4) reveals that the terms embezzlement and larceny were intended to make non-dischargeable any debt resulting from a conversion in which the debtor willfully and maliciously intended to borrow property for a short period of time with no intent to inflict injury but on which injury was in fact inflicted.").

In response, the Defendant asserts that the Plaintiff had no ownership interest in the payment from his ex-wife because the check in question was made payable to him alone and was his property. The Defendant also contends that there is no evidence of fraud, noting that both the Memorandum of Agreement and Assignment acknowledge the possibility of nonpayment and provide for an alternative method of collecting the debt, the lien that was placed on the Defendant's real property.

To ascertain whether the first element of an embezzlement is present, that is, whether the Defendant was entrusted with property belonging to another, the court must determine what interest the Plaintiff had in the Defendant's anticipated payment from his ex-wife. Under Tennessee law, "[a]n assignment is a contract between the assignor and the assignee and is interpreted or construed according to rules of contract construction." *S & M Brands, Inc. v. Summers*, 420 F. Supp.2d 840, 845 (M.D. Tenn. 2006) (citing *In re Kingsport Ventures, L.P.*, 251 B.R. 841, 847 (Bankr. E.D. Tenn. 2000)). Therefore, general principles of contract law are applicable in

determining whether an "assignment" is absolute or something else, like a pledge of security. *See In re Kingsport Ventures, L.P.*, 251 B.R. at 847. As a result, "[t]he cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles." *Id.* (quoting *Gray v. Estate of Gray*, 993 S.W.2d 59, 64 (Tenn. App. 1998)). Words in a contract are to be "given their usual, natural and ordinary meaning." *Id.* (quoting *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. App. 1993)). "Statements within the assignment that the assignment was intended to secure a debt is strong evidence that the assignments are in fact a pledge of security, even if the assignment is referred to as 'absolute.'" *Id.* (citing *In re BVT Chestnut Hill Apartments, Ltd.*, 115 B.R. 116, 117 (Bankr. M.D. Tenn. 1990); *In re Harbour Town Assocs., Ltd.*, 99 B.R. 823, 825 (Bankr. M.D. Tenn. 1989)). "[A]n absolute assignment divests the assignor of any legal right in the subject property as of the date of the assignment and vests those rights in the assignee." *Id.* at 848.

Applying these legal principles to the case at hand leads to the unavoidable conclusion that the assignment was intended by the parties as a pledge of security rather than an absolute assignment. The Memorandum of Agreement, after setting forth the settlement amount and the fact that the Defendant would be paying the settlement in installments, provided that the Plaintiff would have a lien on the Defendant's real property, and that "[i]n addition, *to further secure the Plaintiff's right to payment hereunder*, the Defendant shall assign his right to payment of $15,000.00 from Lisa Marie Parkins . . . ." [Emphasis supplied.] Similarly, the introductory recital provisions of the Assignment state, "WHEREAS, [ Defendant] is willing to assign to [Plaintiff] his right to receive payment from Lisa Marie Parkins . . . *in order to further secure his payment to [Plaintiff]*." [Emphasis supplied.] *See In re Harbour Town Assocs., Ltd.*, 99 B.R. at 825 (finding an assignment of rents was actually a pledge of security where, among other facts, the assignment stated that its purpose was the provision of security). Admittedly, the operative paragraph of the Assignment where the Defendant "hereby assigns to [Plaintiff] his right to receive payment from Lisa Marie Parkins" contains no language limiting the assignment to one for security only. Additionally, the Assignment requires the Defendant to contact the Defendant's ex-wife and advise her to make payment directly to Plaintiff, which directive suggests an outright assignment. On the other hand,

the assignment is not described as absolute and in a subsequent paragraph Plaintiff agrees to release the assignment upon full payment. Lastly, and tellingly, after the Defendant failed to pay the funds to Plaintiff and she returned to state court to obtain an order enforcing the settlement, the judgment order directed the Defendant to make payment within 30 days of the $15,000 that he had formerly "pledged," language indicating that the parties understood that the assignment was a grant of a security interest rather than an absolute assignment.

This interpretation of the Assignment is consistent with the timing in this case. The Memorandum of Agreement was dated August 8, 2008, and provided for the settlement amount to be paid in installments, "as Defendant [was] able over the next year," with full payment due by August 31, 2009. Under the July 21, 2008 judgment order held by the Defendant against his ex-wife, she was to pay him $15,000 by July 11, 2009. Thus, when the parties entered into the settlement agreement and executed the assignment a month later, it was presumably anticipated that the Defendant would make almost a year of installment payments to the Plaintiff before he was scheduled to receive the contemplated payment from the ex-wife, an event that would have occurred shortly before final payment to the Plaintiff was due. When viewed in this light, it is likely that the parties viewed the assignment as a backup, designed to secure full payment, rather than a primary means of paying the agreed-upon settlement.

Because the Defendant's expected payment from his ex-wife remained his property, notwithstanding his pledge of that payment, the Plaintiff's embezzlement argument fails as a matter of law. Most courts, including this court on prior occasions, have concluded that an individual cannot embezzle his own property for purposes of § 523(a)(4). *See First Nat'l Bank of Fayetteville v. Phillips (In re Phillips),* 882 F.2d 302, 305 (8th Cir. 1989); *Mutual Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 756 (Bankr. N.D. Ill. 2010); *Morganroth & Morganroth, PLLC v. Stollman (In re Stollman)*, 404 B.R. 244, 272 (Bankr. E.D. Mich. 2009) (collecting various cases); *The Bank of Castile v. Kjoller (In re Kjoller)*, 395 B.R. 845, 851 (Bankr. W.D.N.Y. 2008); *Calumet v. Whiters (In re Whiters)*, 337 B.R. 326, 333 (Bankr. N.D. Ind. 2006); *Everwed Co. v. Ayers (In re Ayers)*, 25 B.R. 762, 774 (Bankr. M.D. Tenn. 1982); *In re Rodriguez*, 2007 WL 543750, at *5-6 (defining the majority approach); *but see GMAC v. Cline*, No.

9

4:07cv2576, 2008 WL 2740777, *5 (N.D. Ohio July 3, 2008); *Jones v. Hall (In re Hall)*, 295 B.R. 877, 882 (Bankr. W.D. Ark. 2003) (reaching contrary conclusion). Accordingly, the Plaintiff's motion for summary judgment based on this provision of the Bankruptcy Code must be denied.

The court turns next to the Plaintiff's assertion that she is entitled to summary judgment under § 523(a)(6). Pursuant to this section, a debt is nondischargeable if it arises out of "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). In this regard it is well settled that the conversion[2] of a secured creditor's collateral may constitute willful and malicious injury under § 523(a)(6). *See, e.g., Dealer Servs. Corp. v. Erb (In re Erb),* 453 B.R. 914, 920 (Bankr. W.D. Wis. 2011); *In re Jenkins*, 330 B.R. 625, 630 (Bankr. E.D. Tenn. 2005). In order to satisfy the willfulness requirement, the debtor must have acted with the intent to cause injury—a deliberate or intentional act that leads to injury is insufficient. *See In re Markowitz*, 190 F.3d 455, 464 (6th Cir. 1999) (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S. Ct. 974 (1998)). Stated differently, unless the debtor "'desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it,' he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Id.* (citation omitted). The maliciousness component of the provision means "in conscious disregard of one's duties or without just cause or excuse." *Wheeler v. Laudani*, 783 F. 2d 610, 615 (6th Cir. 1986).

In the present case, the Plaintiff asserts that the undisputed facts readily establish these requirements. She points out that she received no installment payments from the Defendant after he signed the Assignment, and that she did not authorize him to keep the assigned funds. The Plaintiff's allegations that the Defendant converted the funds pledged to her and that the conversion was both malicious and willful are supported by her affidavit filed with the complaint.

In response, the Defendant does not explain his failure to pay over to the Plaintiff the proceeds from the payments he received from his judgment against his ex-wife. He merely argues

---

[2] Under Tennessee law, "[c]onversion is 'the appropriation of property to the party's own use and benefit, by the exercise of dominion over it, in defiance of the plaintiff's right.'" *Brandt v. Bib Enters., Ltd.*, 986 S.W.2d 586, 595 (Tenn. App. 1998) (quoting *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. App. 1977)).

in connection with his motion to dismiss that Plaintiff cannot show a deliberate or intentional injury, and that at most, she will only be able to establish a deliberate or intentional act that led to a breach of contract, i.e., the settlement agreement. The Defendant notes that this possible breach was anticipated in the Memorandum of Agreement by the provision that the settlement would be null and void and all claims of the Plaintiff would remain in the event of nonpayment. Although the Defendant denies in his answer that his actions were willful and malicious, he tendered no affidavits or cited any materials in the record that support his denial or dispute the sworn statements offered by the Plaintiff.

Upon consideration of the record as a whole, the court agrees with the Plaintiff that she is entitled to summary judgment on this issue. In her verified complaint, she states that "[t]he Defendant fraudulently, intentionally, willfully and maliciously converted those funds to his own use, causing the Plaintiff's injury" and that "[t]he Defendant had knowledge that his actions would cause injury to the Plaintiff." *See Williams v. Adams*, 935 F.2d 960, 961 (8th Cir. 1991) ("A verified complaint is the equivalent of an affidavit for summary-judgment purposes . . . ."). The former statement establishes both the willful and malicious components of § 523(a)(6), with the latter statement making it clear that the Defendant acted intentionally in converting the Plaintiff's collateral, in conscious disregard of his duties, as opposed to a reckless or negligent conversion. *See Ocean Equity Group v. Wooten (In re Wooten)*, 423 B.R. 108, 131 (Bankr. E.D. Va. 2010) (quoting *Lincoln Land FS, Inc. v. Bennett (In re Bennett)*, 293 B.R. 760, 763 (Bankr. C.D. Ill. 2003) ("the key in conversion cases is to ... determine whether the conversion is in the nature of an intentional tort or whether the conversion is the result of a negligent or reckless tort—but not willful and malicious")). As explained by one bankruptcy court, in determining whether a debtor intended to cause the specific harm inflicted in a conversion case:

> [T]he proper question is not whether the debtor intended that its secured creditor would go unpaid. Instead, the question to ask is whether the debtor intended to improperly use the creditor's collateral and/or its proceeds for purposes other than the payment of the debt that property secured. If so, there is an intentional injury.

*Id.* at 133 (quoting *ABF, Inc. v. Russell (In re Russell)*, 262 B.R. 449, 455 (Bankr. N. D. Ind. 2001)); *see also United States v. Buck (In re Buck)*, 406 B.R. 703, 706 (Bankr. E.D.N.C. 2009) ("In a conversion of collateral case the actual willful injury occurs when the collateral is disposed of, and

11

the proceeds are used for a purpose other than repayment of the debt. This court has previously acknowledged that such an injury qualifies as non-dischargeable.") (internal citations omitted). Applied to the present case, there is no dispute that the Defendant intentionally used the payment from his ex-wife for purposes other than paying the Plaintiff. Accordingly, the requirements of § 523(a)(6) are met in this case.

Notwithstanding the foregoing, the Defendant cites *Steier v. Best (In re Best)*, 109 Fed. Appx. 1, *5 (6th Cir. June 30, 2004), for the proposition that "knowledge that legal rights are being violated is insufficient to establish malice." However, the facts of *Best* are not analogous to the facts herein. In that case, the court concluded that the debtor's efforts to thwart the collection of a judgment held by an unsecured creditor were insufficient to render the judgment nondischargeable under § 523(a)(6), even though those efforts prevented the creditor from collecting his judgment, because the debt held by the creditor arose prior to the debtor's conduct. *Id.* at *5. In the case at hand, the Plaintiff was a secured creditor with a lien interest in the Defendant's expected payment from his ex-wife. Unlike the situation in *Best*, where the court's statement regarding knowledge of legal rights was dictum because the creditor had no legal rights in the property disposed of by the debtor, the Plaintiff herein had legal rights in the Defendant's anticipated payment from his ex-wife based on the assignment. Moreover, the debt in question herein arose from the Defendant's conversion of that asset. Lastly, the undisputed record establishes that the Defendant not only had knowledge of Plaintiff's legal rights in the expected payment, but deliberately acted in derogation of those legal rights by not paying the Plaintiff when he received the check from the court clerk. Consequently, the resulting injury to the Plaintiff, nonpayment, was substantially certain to result from Defendant's deliberate and intentional use of the collateral proceeds for a purpose other than payment to her. Thus, the debt caused by that injury is nondischargeable under § 523(a)(6).

IV.

In summary, the court concludes that there is no genuine issue of material fact and that the Plaintiff is entitled to judgment as a matter of law on her claim that the $15,000 owed to her by the Defendant is excepted from discharge under § 523(a)(6) of the Bankruptcy Code. Consistent with this memorandum opinion, the court will enter an order granting the Plaintiff's summary judgment motion and denying the Defendant's motion to dismiss.

# # #