SIGNED this 1st day of February, 2013

_____
Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE

_____

[This opinion is not intended for publication as the precedential effect is deemed limited.]

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| In re<br><br>    BRADFORD K. PARKINS,<br><br>           Debtor. | No. 12-50439<br>Chapter 7 |
| PAMELA M. GOSS,<br><br>    Plaintiff,<br><br>vs.<br><br>BRADFORD K. PARKINS,<br><br>    Defendant. | Adv. Pro. No. 12-5025 |

**M E M O R A N D U M**

Appearances:

    T. Wood Smith, Esq.                          Jonathan S. Cave, Esq.
    416 W. Main Street                               104 N. College Street
    Greeneville, Tennessee 37743          Greeneville, Tennessee 37743
    *Attorney for Pamela M. Goss*           *Attorney for Bradford K. Parkins*

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.** This adversary proceeding is before the court on the motion of Bradford K. Parkins (the "Defendant") to reconsider this court's memorandum opinion and order entered December 7, 2012. In that ruling, this court granted the summary judgment motion of Pamela M. Goss (the "Plaintiff") and denied the Defendant's motion to dismiss after concluding that a debt owed by the Defendant to the Plaintiff was nondischargeable under 11 U.S.C. § 523(a)(6). In the present motion, the Defendant argues that the court made manifest errors of fact and law in its ruling. The Defendant also tenders what he characterizes as newly discovered evidence. For the reasons discussed below, this court affirms its prior ruling. Accordingly, the Defendant's motion will be denied. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(I).

I.

This court's December 7, 2012 memorandum opinion sets forth the following facts, which were taken from the parties' statements of undisputed material facts, pleadings, and memoranda of law:

> On December 28, 2006, the Plaintiff sued the Defendant in the Chancery Court for Greene County, Tennessee, for damages arising out of an allegedly defective house constructed by the Defendant and sold to the Plaintiff. Although the record is not entirely clear, apparently during the course of the litigation the parties settled the lawsuit, with the Defendant agreeing to pay the Plaintiff $17,800 in settlement of her claims. The terms of the settlement were set forth in a Memorandum of Agreement dated August 8, 2008, and specified that the Defendant would pay the Plaintiff the agreed amount "in installments as Defendant is able over the next year," with any remaining sums plus 6% interest due by August 31, 2009. To secure the settlement, the Defendant agreed to give the Plaintiff a lien on certain real property, and to assign to her his right to payment of $15,000 from his ex-wife Lisa Marie Parkins, as set forth in a judgment entered in the Defendant's favor in a separate proceeding on July 21, 2008. According to the terms of that judgment, Ms. Parkins was to pay the Defendant $15,000 by July 11, 2009. The Memorandum of Agreement between the Plaintiff and the Defendant recited that Plaintiff's case against the Defendant would remain open pending full payment, and that if he breached the agreement by failing to pay all sums due, the settlement would be null and void, and all of Plaintiff's claims would be reinstated.
>
> In accordance with the parties' agreement, the Defendant executed a deed of trust, granting the Plaintiff the contemplated mortgage. Additionally, on September 30, 2008, the parties signed an "Assignment Of Payments To Be Received Under

2

Judgment." The Assignment provided that:

> [Defendant] hereby assigns to [Plaintiff] his right to receive payment from Lisa Marie Parkins under the judgment in Case No. 07CV018. [Defendant] will promptly provide notice of this Assignment to Lisa Marie Parkins, will advise her to make timely payment directly to [Plaintiff] unless notified by [Plaintiff] otherwise, and will provide [Plaintiff] with documentation that he has provided Lisa Marie Parkins with said notice.

The Assignment also recited that the Plaintiff was a holder of a mortgage lien in the amount of $17,800 against certain real property owned by the Defendant, and that Plaintiff agreed to release the mortgage lien and the assignment upon payment in full of the $17,800 plus interest.

Subsequent to the Assignment, Lisa Marie Parkins paid into the office of the Circuit Court Clerk for Greene County a check in the amount of $12,431.77. Additionally, Greeneville Federal Bank paid into the same office the sum of $4,127.84 from a levy by the Defendant on Lisa Marie Parkins' bank account. On August 19, 2009, the Circuit Court Clerk delivered these two sums to the Defendant, by check made payable to him in the amount of $16,559.61.

Despite the assignment, the Defendant negotiated the check and retained the proceeds. Thereafter, the Plaintiff returned to Greene County Chancery Court where her lawsuit against the Defendant was still pending, and moved to enforce the parties' settlement agreement. On June 9, 2010, the state court entered a judgment against the Defendant in the amount of $17,800, plus $1,869, for interest that had accrued since the August 8, 2008 settlement, and attorney fees. The order further directed the Defendant to "make payment within thirty (30) days to the Plaintiff of the $15,000 which he pledged as a partial settlement payment."

On March 7, 2012, almost two years later, the Defendant filed for chapter 7 bankruptcy relief. In turn, the Plaintiff initiated this adversary proceeding on June 11, 2012, pursuant to 11 U.S.C. § 523(a)(2), (4), and (6). Although not clear from the complaint, it appears that the Plaintiff's allegations of nondischargeability pertain solely to the Defendant's failure to pay the Plaintiff the $15,000 that he had assigned to her from his judgment against his ex-wife. According to the complaint, the allegations of which were sworn to by the Plaintiff, the Defendant "fraudulently, intentionally, willfully and maliciously failed to negotiate that check over to the Plaintiff"; "fraudulently, intentionally, willfully and maliciously converted those funds to his own use, causing Plaintiff's injury"; and "[t]he Defendant had knowledge that his actions would cause injury to the Plaintiff." The Plaintiff further alleges that "[w]hile the underlying debt owed by the Defendant to the Plaintiff . . . may have been dischargeable, the Defendant's conversion of funds he had assigned to the Plaintiff amounted to theft and conversion, and is nondischargeable."

The Defendant filed an answer to the complaint, denying the allegations of

3

>nondischargeability. Thereafter, the Defendant filed on October 5, 2012, a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The Plaintiff responded on October 12, 2012, with a motion for summary judgment as to her § 523(a)(4) and (6) counts. The motion was supported by the affidavit of the Plaintiff; the affidavit of Pam Venerable, Clerk of the Greene County, Tennessee Circuit Court, to which is attached certain state court pleadings and documents; and the affidavit of Kay Solomon-Armstrong, Clerk and Master of the Greene County, Tennessee Chancery Court, along with certain attachments.

Mem. Op. at pp. 2-4.

As previously noted, this court granted the Plaintiff's motion for summary judgment based on the Plaintiff's § 523(a)(6) nondischargeability claim. Before reaching this conclusion, the court first rejected the Plaintiff's § 523(a)(4) nondischargeability claim that was based on the assertion that the Defendant's actions constituted embezzlement. Applying general principles of contract law to the language of the parties' settlement agreement and the subsequent assignment, the court concluded that the assignment by the Defendant to the Plaintiff of his right to payment from Lisa Marie Parkins was an assignment for security rather than an absolute assignment, a conclusion confirmed by the state court order which had referred to the assignment as a "pledge of security." See Mem. Op. 7-9. Because the Defendant retained an interest in the payment, despite the grant of a security interest, and because as a matter of law one cannot embezzle his own property, this court concluded that a claim for embezzlement under § 523(a)(4) would not lie. *See* Mem. Op. at p. 9 (citing, *inter alia, First Nat'l Bank of Fayetteville v. Phillips (In re Phillips)*, 882 F.2d 302, 304-05 (8th Cir. 1989) (concluding that a party cannot embezzle its own property for purposes of § 523(a)(4)).

With respect to the Plaintiff's § 523(a)(6) claim, this court first noted that it is well settled that a conversion of a secured party's collateral may provide a basis for nondischargeability under this Code section, provided that the conversion was willful and malicious. *See* Mem. Op. at p. 11. These elements were established in this case by the Plaintiff's undisputed affidavit. Although the Defendant had denied in his answer that his actions were willful and malicious, he did not file any affidavit or cite any materials in the record that supported his unverified denial or that disputed the sworn statements offered by the Plaintiff. In fact, the Defendant offered no explanation whatsoever

for his failure to pay to the Plaintiff the funds that he had received from his ex-wife.

In his present motion to reconsider, the Defendant makes three primary arguments. First, the Defendant contends that this court made a "manifest error of fact" by its reliance on the state court's June 9, 2010 order as a basis for this court's determination that the assignment was for the purpose of securing the settlement agreement. According to the Defendant, this order was drafted by Plaintiff's legal counsel in contemplation of the Defendant's possible future bankruptcy filing, was not approved by the Defendant, who did not have legal counsel at the time, and violated the local rules of that court since it did not bear a certificate of service or evidence approval by the Defendant. The Defendant's second argument in support of his motion to reconsider is that this court made a manifest error of law in concluding that the assignment was a pledge of security. Third, and lastly, the Defendant argues that his denial of willful and malicious in his answer was sufficient to create a disputed issue of material fact precluding summary judgment in the Plaintiff's favor. Alternatively, the Defendant submits "new evidence" in the form of his personal affidavit that his actions were not intentional.

In the Plaintiff's response to the Defendant's motion to reconsider, the Plaintiff notes that the Defendant's allegations regarding the alleged deficiencies in the state court order were not set forth in the parties' statements of undisputed material facts and argues that the allegations are not otherwise properly before the court. As to the Defendant's argument that this court erred in concluding that the assignment was a pledge of security, the Plaintiff characterizes the argument as nothing more than a personal opinion that this court was incorrect. Lastly, the Plaintiff maintains that the Defendant's affidavit is not newly discovered evidence, but merely a self-serving statement that could have previously been submitted.

II.

As appropriately recognized by the Defendant, his motion to reconsider is more accurately a motion to alter or amend judgment under Federal Rule of Civil Procedure 59(e), made applicable to this adversary proceeding, with certain modifications, by Federal Rule of Bankruptcy Procedure

5

9023.[1] "A court may grant a Rule 59(e) motion to alter or amend [a judgment] if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). In other words, a Rule 59(e) motion is proper only if it contains "an argument or controlling authority that was overlooked or disregarded in the original ruling, presents evidence or argument that could not previously have been submitted, or successfully points out a manifest error of fact or law." *Davie v. Mitchell*, 291 F. Supp. 2d 573, 634 (N.D. Ohio 2003). Parties "cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 395 (6th Cir. 2007) (citations omitted).

This court's first alleged error, as argued by the Defendant, pertains to the state court's June 9, 2010 order. This is the order entered by the state court at the Plaintiff's request after the Defendant failed to comply with the terms of the parties' settlement agreement and failed to pay over to the Plaintiff the funds that he had received from his ex-wife. This order awarded a judgment against the Defendant pursuant to the terms of the settlement agreement and directed the Defendant to "make payment within thirty (30) days to the Plaintiff of the $15,000 which he pledged as a partial settlement payment." In this court's memorandum opinion, the pledge language was referenced as "indicating that the parties understood that the assignment was a grant of a security interest rather than an absolute assignment." According to the Defendant in his motion to reconsider, this court's reliance on the state court order was a manifest error of fact because the order was an ex parte order drafted by Plaintiff's legal counsel in contemplation of a possible future bankruptcy filing by the Defendant, and because the order was neither approved by the Defendant, nor served on him prior to its entry, "technically in violation of Third District Chancery Court Rule 14 since it does not bear a certificate of service or approval by the Defendant." In response, the

---

[1] Under Rule 59(e), "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). However, in cases under the Bankruptcy Code, "[a] motion for a new trial or to alter or amend a judgment shall be filed . . . no later than 14 days after entry of judgment." Fed. R. Bankr. P. 9023.

Plaintiff asks that these factual allegations be stricken, noting that none of them is in the record before this court and that they were not previously set forth in the Defendant's statement of undisputed material facts.

This court agrees that the Defendant's assertion of any "technical" deficiency in the order or other collateral attack on the order is improper. In connection with this court's initial consideration of the Plaintiff's summary judgment motion, the Defendant made no allegations regarding any deficiencies in the state court order, even though the Plaintiff's factual basis for her nondischargeability claim is that judgment debt. To the contrary, in his answer the defendant admitted entry of the judgment against him and asserted no affirmative defenses concerning the validity of the judgment. Additionally, under the Full Faith and Credit Statute, 28 U.S.C. § 1738, this court must give the state court judgment the same effect that the rendering state would. *See Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105 S. Ct. 1327 (1985) ("Section 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and Due Process Clause, the preclusive effect of judgments in their own courts."). There is no indication that Tennessee state courts would not give preclusive effect to the final judgment entered against the Defendant more than two years ago, notwithstanding its alleged technical deficiencies. Accordingly, any assertion that this court erred in its consideration of the June 9, 2010 order is without merit.

Furthermore, even absent consideration of the June 9, 2010 order, this court is not convinced it erred in concluding that the parties intended the assignment to be a pledge of security. To the contrary, as discussed in the memorandum opinion, both the settlement agreement entitled "Memorandum of Agreement" and the subsequent assignment document entitled "Assignment of Payments To Be Received Under Judgment" refer to the assignment as being for the purpose of securing payment of the settlement. The Memorandum of Agreement, after describing the settlement amount and stating that the Defendant would be paying the settlement in installments, provided that Plaintiff would have a lien on the Defendant's real property and that "[i]n addition, to further secure the Plaintiff's right to payment hereunder, the Defendant shall assign his right to payment of $15,000.00 from Lisa Marie Parkins . . . ." Similarly, an introductory recital provision

7

of the Assignment itself states, "WHEREAS, [Defendant] is willing to assign to [Plaintiff] his right to receive payment from Lisa Marie Parkins . . . in order to further secure his payment to [Plaintiff]." Additionally, paragraph 3 of the Assignment recites that the Plaintiff "agrees to release . . . this assignment upon payment in full of the $17,800, plus interest" that was to be paid by installments over a period of one year from the execution of the Memorandum of Agreement. Thus, both documents are consistent in their description of the assignment as one for security, and would be sufficient evidence of the nature of the assignment even without consideration of the subsequent state court order.

The next alleged error cited by the Defendant is a variation of the first, that the court erred "in ruling that an assignment of payments that indicates it is to secure a preexisting debt can be interpreted as a 'pledge of security.'" The Defendant makes three points in support of this argument. First, he asserts that pursuant to the Memorandum of Agreement's terms it became null and void when it was breached by the Defendant, and therefore cannot be considered by this court. Second, the Defendant argues that the cases cited by this court in support of its conclusion pertained to an assignment of rents in connection with the creation of a debt and have no applicability to the facts of this case which involve an assignment for a preexisting debt. Lastly, the Defendant argues that rather than an assignment for security, the assignment was an absolute assignment because it required the Defendant to contact his ex-wife and advise her to make payment directly to the Plaintiff. As discussed hereafter, none of these grounds have merit or otherwise convince the court that it erred in concluding that the Defendant granted the Plaintiff an interest in his anticipated payment from ex-wife in order to secure payment to the Plaintiff of the settlement amount.

With respect to the Defendant's first point, the Memorandum of Agreement provides in paragraph 6:

> This case shall remain open until the Defendant has paid the total amount due hereunder, and if he breaches this Agreement by failing to pay and [sic] all sums due under this mediated settlement Agreement, then this attempted mediation Agreement shall be null and void, and all of the Plaintiff's claims in this case shall remain viable.

While not artfully drafted, it appears to this court that the purpose of the provision was to preserve the Plaintiff's original claim in the event the Defendant failed to timely pay the negotiated settlement

8

amount. Neither this fact nor the Agreement's use of the phrase "null and void" precludes the court's examination of the Agreement to determine the intent of the parties and whether the assignment was designed to convey to the Plaintiff a property interest in the Defendant's anticipated payment from his ex-wife. As the Agreement and Assignment plainly establish, the purpose of the assignment was to secure payment of the settlement in the event of a default by the Defendant. For the Defendant to argue that his default in payment rendered the settlement and the assignment no longer effective would lead to an anomaly that neither party could have intended.

The Defendant's next point is that the cases cited by this court in the memorandum opinion are not applicable to this action because those cases involved assignments of rents to secure the extension of credit while the current case involves an assignment for a preexisting debt. In this regard, the Defendant cites *In re Kingsport Ventures, L.P.*, 251 B.R. 841, 846-47 (E.D. Tenn. 2000), for the proposition that "Tennessee courts have recognized that a grant of a security interest in property and an absolute assignment of property are two distinct and allowable methods for *creating credit* against which a party may borrow funds." ( Emphasis added by the Defendant.) While, admittedly, the context of the assignments are dissimilar, no authority is cited for the proposition that this dissimilarity compels a different conclusion than the one reached by this court. To the extent that the Defendant is arguing that the Assignment lacked consideration because the "credit" or debt that it secured existed prior to the grant of the security interest, to the contrary it is well established that the settlement of the state court litigation provided the required consideration. *See Walker v. First State Bank*, 849 S.W.2d 337, 342 (Tenn. Ct. App. 1992) ("For there to be a consideration in a contract between parties to the contract it is not necessary that something concrete and tangible move from one to the other. Any benefit to one and detriment to the other may be a sufficient consideration."); *Keller v. State Farm Ins. Co.*, 536 N.E.3d 194, 198 (Ill. App.1989) (settlement of disputed claim will serve as consideration for contract, as will promise to forego legal action). Moreover, it was not necessary that credit be extended after the grant of the security interest for the Assignment to be enforceable. *See First Peoples Bank of Jefferson Cnty. v. United States*, 806 F. Supp. 187, 191 (E.D. Tenn. 1992) ("Past consideration is plainly sufficient to support a security agreement under Tennessee law, which has adopted a version of the Uniform Commercial Code.").

9

In connection with this same point is the Defendant's assertion that this court improperly applied the law concerning assignments of rent in concluding that the parties' Assignment was a grant of a security interest. According to the Defendant, Tennessee law classifies assignments of rents as security interests by statute,[2] thus distinguishing them from the "assignment of payment" present in this case. While the court questions the underlying premise of the Defendant's argument, the court notes that it did not rely on the statute in concluding that the assignment at issue was one for security, but instead utilized contract case law in determining that the assignment was for security rather than an absolute assignment. Although some of the cases involved assignments of rents, rather than an assignment of payment, the Defendant, again, fails to articulate how the result would be different with respect to a payment assignment. Moreover, while the Defendant at one point argues that the assignment was absolute rather than for security, this assertion is puzzling since

---

[2] The statute cited by the Defendant, Tenn. Code Ann. § 66-26-116 provides as follows:

(a) Upon registration, in the county where the real property lies, of any instrument granting, transferring, pledging or assigning the lessor's interest in leases or rents arising from real property, the interest of the grantee, transferee, pledgee or assignee shall be fully perfected as to the grantor, transferor, pledgor or assignor and all third parties without the necessity of furnishing notice to the assignor or lessee, obtaining possession of the real property, impounding the rents, securing the appointment of a receiver, or taking any other affirmative action, and shall have the priority provided for in this chapter.

(b) The lessee is authorized to pay the assignor until the lessee receives notification that rents due or to become due have been assigned and that payment is to be made to the assignee. A notification that does not reasonably identify the rents assigned is ineffective. If requested by the lessee, the assignee must seasonably furnish reasonable proof that the assignment has been made and unless the assignee does so the lessee may pay the assignor.

(c) Any registered instrument granting, transferring, pledging or assigning an interest in leases or rents arising from real property shall, upon satisfaction, be released as provided in chapter 25 of this title and shall be subject to the penalties provided in such chapter.

In *Kingsport*, the court states that "'[u]nder Tennessee law an assignment of rents is presumed to be a pledge of rents as security.' . . . The presumption is not conclusive and may be rebutted with evidence that the assignment of rents was an absolute assignment rather than a pledge of security." *In re Kingsport Ventures, L.P.*, 251 B.R. at 846–47.

10

a finding of an absolute assignment would not alter the result in this case. To the contrary, an absolute assignment would mean that the Defendant had no rights in the funds after the assignment, and arguably support the Plaintiff's embezzlement claim under § 523(a)(4) as well.

Upon review, this court remains convinced that the Assignment in question was intended to create a security interest. Under Tennessee law an enforceable security interest is created in personal property if:

(1) value has been given;

(2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and

(3) one (1) of the following conditions is met:

> (A) the debtor has authenticated a security agreement that provides a description of the collateral . . . .

Tenn. Code Ann. § 47-9-203(b). These elements are satisfied in this case, because: (1) value was given by settling the state court action; (2) the Defendant had rights in the judgment payments collateral that were transferable; and (3) the Assignment contained a description of the collateral and was signed by the Defendant.

Regarding the latter element, a "security agreement" is an agreement that "creates or provides for a security interest." Tenn. Code Ann. § 47-9-102(a)(73). As stated by other courts:

> There are no magic words that create a security interest. There must be language, however, in the instrument which when read and construed leads to the logical conclusion that it was the intention of the parties that a security interest be created . . . . The requirements of the Code for creating a security interest are simple–an intention to create a security interest is all that need be shown–a dozen words or less are sufficient, but the security agreement must contain language that meets this simple requirement.

*McLemore v. Carson Ltd. (In re Sealy)*, 34 B.R. 947, 950 (Bankr. M.D. Tenn. 1983) (quoting *In re Nottingham*, No. 27,137, 1969 WL 11098 (E.D. Tenn. Sept. 12, 1969)); *see also Drown v. Perfect (In re Giaimo)*, 440 B.R. 761, 768 (B.A.P. 6th Cir. 2010) (reaching similar conclusion in interpreting analogous provision of the Ohio Uniform Commercial Code). Consequently, "[e]ven unorthodox documents containing words such as 'collateral,' 'pledge,' 'to secure,' 'security,' assignment language, and 'lienholder,' are likely to be upheld as adequate security agreements, even when not

11

explicitly labeled as such." 4 White, Summers & Hillman, *Uniform Commercial Code* § 31-3 (6th ed. 2012); *see also* 6A C.J.S. *Assignments* § 96 (2012) ("An assignment that is made as collateral security for a debt gives the assignee only a qualified interest in the assigned chose, commensurate with the debt or liability secured, even if the assignment is absolute on its face.  Such an assignment is not controlled by its form but is treated and considered as a security device.").  Accordingly, this court reaffirms its conclusion that the language contained within the Assignment reflected the parties' intention to create a security interest.

The Defendant's final argument in support of his motion to reconsider is that his denial of willful and malicious in his answer was sufficient to create a disputed issue of material fact precluding summary judgment in the Plaintiff's favor.  In responding to a motion for summary judgment, a party asserting the presence of a genuine dispute as to a material fact "must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1), incorporated by Fed. R. Bankr. P. 7056.  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[] [and] grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it[.]" Fed. R. Civ. P. 56(e).  In other words, the respondent must "do more than make 'reference only to its pleadings' to defeat a properly made summary judgment motion." *Caterpillar Fin. Servs. Corp. v. Sunnytime Seeding and Landscaping, LLC*, No. 10-316 , 2011 WL 4834242, *2 (E.D. Ky. Oct. 12, 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548 (1986).  "The failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion." *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009).  Thus, this court did not err in its conclusion that the denials in the Defendant's answer were insufficient to create a genuine dispute as to a material fact.

As an alternative to this argument, the Defendant now submits his personal affidavit wherein

he states that he never intended to cause financial injury to the Plaintiff. In the context of Rule 59(e) motions, however, "newly discovered evidence" is defined as evidence that was not previously available. *Gencorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted). It is not evidence that was available, but not previously supplied to this court. *See Gritton v. Disponett*, 332 F. Appx. 232, 239 (6th Cir. 2009) (concluding that newly submitted witness statements were not new evidence because they could have been obtained during discovery); *see also Sch. Dist. No. 1J, Multnomah Cnty. v. AcandS, Inc.,*, 5 F.3d 1255, 1263 (9th Cir. 1993) ("[T]he failure to file documents in an original motion or opposition does not turn the late filed documents into 'newly discovered evidence.'"). Because the Defendant could have tendered his affidavit in connection with the court's initial consideration of the motion, the affidavit cannot be a basis for granting the Defendant's motion to reconsider. *See CGH Transp., Inc. v. Quebecor World, Inc.*, 261 F. Appx. 817, 824 (6th Cir. 2008) (concluding that witness affidavit was not previously unavailable evidence).

In the conclusion section of his motion to reconsider the Defendant asserts that the court's ruling in this case is against public policy, and if allowed to stand will create a "slippery slope" leading to unintended consequences.

> For example, payday loan companies would be able to make their debts nondischargeable by simply stating that the debtor's paychecks are security for their debts. In addition, creditors would be able to take their existing dischargeable debts and be able to bully their debtors into signing further agreements that could make the previously dischargeable debts into brand new [non]dischargeable ones without having to provide any kind of additional service or benefit to the debtor.

This court disagrees. First, the factual premises of the examples presented by the Defendant are not the facts of this case. This case does not involve a payday loan and there no evidence that the Defendant was "bullied" into signing the settlement agreement and assignment. Instead, the Defendant received ample consideration for his assignment by the forbearance of the Plaintiff in pursuing her lawsuit against him. Second, the legal conclusion reached concerning the payday lender example ignores pertinent Tennessee law. *See In re Brigance*, 234 B.R. 401, 405 (Bankr. W.D. Tenn. 1999) (payday lender retained security interest in postdated check only until due date for payment); Tenn. Code Ann. § 50-2-105 (wage income may not be assigned without court order or assent of employer). Finally, the Defendant seems to imply that any conversion of a security

interest is sufficient to create a nondischargeable debt, which is not a valid statement of the law. In order for a conversion of collateral to be declared nondischargeable the conversion must be intentional, as opposed to negligent or reckless, and malicious. *See, e.g., Nat'l City Bank v. Wikel (In re Wikel)*, 229 B.R. 6, 9 (Bankr. N.D. Ohio 1998) ("conversion continues to be a basis for nondischargeability, as long as it was committed with the intent to cause harm, and not merely negligently or recklessly") (discussing *Kawaahau v. Geiger*, 523 U.S. 57, 118 S. Ct. 974 (1998)). The undisputed evidence in this case satisfied these requirements.

### III.

For the reasons set forth above, an order will be entered denying the Defendant's motion to reconsider.

### # # #